IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 15, 2020

**STATE OF TENNESSEE v. JAMES EDWARD KNIGHT**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-A-806      Mark J. Fishburn, Judge**

_____

**No. M2019-00838-CCA-R3-CD**

_____

The Defendant, James Edward Knight, pled guilty to aggravated assault, a Class C felony, in exchange for a sentence of nine years with the manner of service to be determined by the trial court.  Following a sentencing hearing, the trial court ordered that the sentence be served in confinement, which the Defendant now challenges.  After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Martesha L. Johnson, District Public Defender; Emma Rae Tennent, Assistant Public Defender (on appeal); and Brian M. Griffith and Kathryn Hansel, Assistant Public Defenders (at hearings), Nashville, Tennessee, for the appellant, James Edward Knight.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn Funk, District Attorney General; and Vince Wyatt, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The Defendant was charged with attempted first-degree murder and aggravated assault as a result of his brutal attack of the victim that left the victim with permanent brain damage.  He pled guilty to the aggravated assault charge in exchange for a sentence of nine years and dismissal of the attempted first degree murder charge.

At the onset of the plea hearing, the Defendant stated that despite having the flu, he was able to understand the proceedings that day. He said that he had reviewed the plea petition with his attorney, and he understood it fully and completely. He acknowledged the offenses he was charged with as well as the potential sentence each carried. He agreed that he was accepting an out-of-range sentence but that it was a shorter sentence than he would have received if convicted of attempted first degree murder.

The trial court reviewed the Defendant's rights, and the Defendant said that he was entering the plea because he was guilty. The State then summarized the underlying facts of the offense as follows:

> [O]n July 16th, 2016 at approximately 8:20 p.m., Metropolitan Nashville Police Officers were dispatched to a Marathon gas station located at 2801 John A. Merritt Boulevard here in Nashville Davidson County in reference to an assault. When officers arrived, they found the victim, Ronald Black, unconscious. He had to be transported to Vanderbilt Medical Center for his injuries. [The victim] was eventually released from the hospital, but the man is unable to care for himself and is going to be in a long-term care facility. The video surveillance from that store captured the incident. The video shows [the victim] approach the suspect later identified as [the Defendant] outside the store. When [the victim] approached [the Defendant], [the Defendant] immediately punched [the victim] in the face causing him to stumble backwards. [The Defendant] then grabbed [the victim] and threw him to the ground. While [the victim] was on the ground, [the Defendant] kicked [the victim]'s head eleven times causing [the victim]'s head to stri[ke] the pavement with each kick. After the assault, [the Defendant] walked away from [the victim] and fled from the store. Still shots from the surveillance were distributed to media. Multiple tips came in to Crime Stoppers, and Metro Police Officer Caesar Harris also positively identified [the Defendant] as the suspect in the surveillance video.

The trial court conducted a sentencing hearing to determine the manner of service of the sentence. The State first introduced the Defendant's presentence report and surveillance footage from the gas station where the offense took place into evidence. The surveillance footage showed the victim say something to the Defendant, and then the Defendant began beating the victim. The Defendant pushed the victim to the ground and kicked him several times in the neck, shoulders, and head. The Defendant then walked away from the scene.

JaVonna Black, the victim's sister, testified that the victim was fifty-seven years old at the time of the incident and that he was in a coma for twenty-seven days and sustained

severe brain damage from the assault. The victim needs to have around the clock care because he cannot do many activities required for daily living. Because Ms. Black could not provide the care the victim needed, the victim lived in a psychiatric facility. Ms. Black chose the facility because it was smaller and would provide better care, but it requires a two-hour roundtrip drive for her and her niece to visit him. Ms. Black said that prior to the attack, the victim was "a mild, meek, calm guy" who had "never been in a fight ever in his life[.]" She asked the court to impose a sentence of incarceration.

Ericka Black, the victim's niece, testified that the victim "essentially went from a sixty-year[-]old man to a three-year[-]old toddler" as a result of the Defendant's attack. She said that the victim can feed himself but otherwise "can't function normally as a regular adult." For example, the victim cannot dress himself or be left alone and has no impulse control or balance. She also asked the court to impose a sentence of incarceration.

The Defendant submitted several documents in support of his request for alternative sentencing. Among these documents were letters written by employers and friends on his behalf, and copies of paystubs verifying his employment. The Defendant also delivered a statement of allocution in which he apologized to the victim and his family.

Following the argument of the parties, the trial court first summarized that the matter before it was to determine the manner of service in which the Defendant would serve his agreed, out-of-range sentence of nine years at thirty-five percent. The court then reviewed the sentencing guidelines and principles of sentencing, as well as the evidence it was taking into consideration. The court found that the following enhancement factors were applicable: The Defendant had a previous history of criminal convictions or behavior; the Defendant treated the victim with exceptional cruelty during the commission of the offense; the personal injuries inflicted upon the victim were particularly great; and the Defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(1), (5), (6), and (10).

As to the Defendant's history of criminal convictions and behavior, the court observed that "most of them [are] for low-level drug offenses and licenses offenses, but nevertheless they are still criminal convictions," and that the Defendant admittedly used illegal drugs for seventeen years. With regard to the exceptional cruelty with which the victim was treated, the court recalled "the brutality with which [the Defendant] stomped [the victim]'s head into the asphalt and then just calmly walked off." Addressing the victim's injuries being particularly great, the court noted that serious bodily injury is an element of the crime of aggravated assault but said that "the extent of [the victim's injuries is] so overwhelmingly beyond the definition of serious bodily injury that I think that that factor is still applicable." With regard to the Defendant's having no hesitation about committing a crime when the risk to human life was high, the court observed that "there's

nothing in the video that suggests there was anything that [the victim] did to justify any type of physical aggression towards him." The court reviewed the statutory mitigating factors and found that none were applicable.

In determining whether to impose an alternative sentence, the trial court reviewed the information before it indicative of the Defendant's potential for rehabilitation, including the Defendant's physical and mental condition, educational and work history, character and social history, and familial and community support. The court acknowledged that the Defendant had complied with the bond conditions that were set in the case, that he had not been rearrested, and that the Defendant had not had any positive drug tests and claimed he had stopped using drugs. However, the court noted that the Defendant had only recently addressed his drug use and that previously "he . . . show[ed] a failure of past efforts of rehabilitation from the standpoint that he continually, over the years, got arrested and cited for continued use of drugs."

The court considered the "deleterious effects of the criminal conduct on the victim and whether those effects c[ould] be mitigated through restitution, community service or other means," and observed that "next to homicide, this is about as bad as it gets, and . . . there's no real reasonable or rational method to mitigate what has happened . . . the injuries were just that devastating." The court summarized that "while aggravated assault is kind of a middle of the road felony within the scheme of our felony laws, I don't know that I've seen a more vicious unjustified and heinous aggravated assault as I was shown on this video[.]"

The court concluded that confinement was necessary to avoid depreciating the seriousness of the offense, describing it as "horrifying, shocking, reprehensible . . . [and] for no apparent reason whatsoever." The court found that the nature and consequences of the offense "outweigh any real rehabilitative matters[.]"

## ANAYLSIS

On appeal, the Defendant argues that the trial court's denial of an alternative sentence and imposition of a sentence of continuous confinement was "excessive and not the least severe measure necessary to achieve the purposes of sentencing."

A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

- 4 -

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b).

We review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6).

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. Id. § 40-35-303(a). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he is a suitable candidate for probation. Id. § 40-35-303(b); State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both

the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

There is no bright line rule for determining when a defendant should be granted probation. Bingham, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. Goode, 956 S.W.2d at 527. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

In determining if incarceration is appropriate in a given case, a trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1). Furthermore, the defendant's potential for rehabilitation or lack thereof should be examined when determining whether an alternative sentence is appropriate. Id. § 40-35-103(5).

Included in the record on appeal are the transcripts from a bond reduction hearing that the trial court conducted over the course of two dates in 2017. At the bond reduction hearing, Arthur Knight, the Defendant's uncle, testified to the support the Defendant had from his family, including his sister and daughter, both of whom were in court that day. Keenan Robinson, a long-time friend of the Defendant, testified that the Defendant had worked with him in creating inspirational music and movies, as well as in getting curriculum together for children in alternative school. Mr. Robinson said that he had spoken with the Defendant about the incident that gave rise to the charges in the case, and the Defendant indicated that he was protecting himself. Mr. Robinson maintained that he had never seen or heard of the Defendant getting angry or violent with people in the past. Detective Andrew Chouanard with the Metropolitan Nashville Police Department described the offense and the steps taken in the investigation.

At the conclusion of the bond reduction hearing, the trial court reduced the Defendant's bond but imposed certain conditions or his bond would be revoked. The court stated:

> He will be required to live with his sister at 2604 Albion Street. He needs to sign up with Avertest. He needs to be tested at the highest level. He has got a long history of drugs. I suspect he will be positive for drugs in a week or two and back in jail and I will let you know if you come up positive for any drugs you are going back to jail period, no if[s], ands, or buts.
>
> If you miss a drug test you are going to be – you have got to call in every day, seven days a week and they are going to tell you whether to come in or not. If you miss an appointment it is considered a positive drug screen and you're going to jail, no ifs, ands, or buts.

The Defendant asserts that his compliance with conditions of bond that the trial court did not expect him to meet "demonstrates his substantial potential for rehabilitation." However, the court was aware of the Defendant's compliance with the bond conditions and spent a good amount of time considering the Defendant's potential for rehabilitation but, in its discretion, found that the "vicious[,] unjustified[,] and heinous" assault of the victim "outweigh[ed] any real rehabilitative matters[.]"

In addition, the Defendant argues that the trial court misapplied the enhancement factor involving serious bodily injury to the victim and erred in not considering his plea of guilt and remorse as mitigating factors. In applying the enhancement factor regarding serious bodily injury, the trial court acknowledged that serious bodily injury was an element of the aggravated assault but determined that "the extent of [the victim's injuries were] so overwhelmingly beyond the definition of serious bodily injury" that the factor was applicable. Regardless, a trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed . . . [s]o long as there are other reasons consistent with the purposes and principles of sentencing[.]" Bise, 380 S.W.3d at 706.

The trial court acted appropriately within its discretion in determining that an alternative sentence would depreciate the seriousness of the offense and therefore imposing a sentence of confinement. The surveillance video shows that without apparent provocation, the Defendant threw the victim onto the pavement and kicked him in the head eleven times, causing the victim's head to strike the pavement with each kick. The Defendant then casually walked away. The Defendant's actions left the victim with permanent brain damage and unable to perform most activities of daily living. The circumstances of the offense as committed were more egregious than that contemplated

simply by the elements of aggravated assault.  See State v. Trent, 533 S.W.3d 282, 292-93 (Tenn. 2017).  The trial court did not abuse its discretion in imposing a sentence of confinement.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE